**UNITED STATES of America and Western Electric Company, Incorporated, Plaintiffs,**

v.

**Byron L. DORGAN, as State Tax Commissioner of and for the State of North Dakota, and his successors in office, et al., Defendants.**

Civ. No. A3–74–68.

United States District Court,
D. North Dakota,
Southeastern Division.

Dec. 5, 1974.

9. 2 U.S.Code Cong. & Admin.News (1972) at 2183.

Harold O. Bullis, U. S. Atty., Fargo, N. D., for United States.

Frank J. Magill, Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, N. D., for Western Electric.

Kenneth M. Jakes, Albert R. Hausauer, Robert W. Wirtz, Sp. Asst. Attys. Gen., Bismarck, N. D., for defendants.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

On the grounds that it is necessary in the aid of this Court's jurisdiction and to protect Federal interests of the United States of America, the plaintiffs have filed a motion with this Court for an order staying, pending a final determination in the case, administrative proceedings instituted by the defendant taxing authorities of the State of North Dakota. Defendants resist the motion.

The above entitled action was filed in this Court on July 23, 1974. The relief sought is a declaratory judgment:

> "That Western Electric is not liable for any sales or use taxes of the State of North Dakota to the extent that it provides tangible personal property and services to the Department of the Army under its contract for the design, production and installation of equipment for use in the SAFEGUARD antiballistic missile defense system located with the State of North Dakota."

> "That the United States and Western Electric are not liable for any sales or use taxes of the State of North Dakota by virtue of the SAFEGUARD Contract."

On July 26, 1974, three days after the action was filed, Plaintiff Western Electric Company, Incorporated (Western Electric), received from Defendant State Tax Commissioner of the State of North Dakota (Tax Commissioner), pursuant to Section 57–39.2–15 and Section 57–40.2–13 North Dakota Century Code (NDCC),[1] a "Notice of Determination"

1. "57–39.2–15. Failure to file return—Incorrect return.—If a return required by this chapter is not filed, or if a return when filed is incorrect or insufficient the commissioner shall determine the amount of tax due from such information as he may be able to obtain, and, if necessary, may estimate the tax on the basis of external indices, such as number of employees of the person concerned, rentals paid by him, his stock on hand, and other factors. The commissioner shall give notice of such determination to the person liable for the tax. Such determination shall fix the tax finally and irrevocably unless the person against whom it is assessed, within fifteen days after the giving of notice of such determination, shall apply to the commissioner pursuant to chapter 28–32 for a hearing or unless the commissioner of his own motion shall reduce the same. At such hearing evidence may be offered to support such determination or to prove that it is incorrect. After such hearing the commissioner shall give notice of his decision to the

that sales and use taxes in the amount of $54,078,756.98 were due from Western Electric for the period beginning April 1, 1971, and ending December 31, 1973. The Notice advised Western Electric " . . . the tax due will become finally and irrevocably fixed unless within *fifteen days* after you receive this notice you apply to the Tax Commissioner for a hearing, at which hearing you may produce evidence that this determination of tax is incorrect."

To preserve its rights to contest the determination and without waiving its rights to pursue its remedy in this Court, Western Electric made application to the Tax Commissioner for a hearing, and at the same time filed its motion with this Court for the stay order. In resisting the motion for a stay order, defendants do not dispute the jurisdiction of the federal court to hear the case on its merits or to issue a stay order staying the State administrative proceedings. Jurisdiction in the case is based on 28 U.S.C. §§ 1345, 2201, 1331 and 1332.

The complaint alleges, in substance, that since about April 1, 1968, Western Electric, under contract with the Department of the Army, an agency of the United States of America, has been engaged in the design, production, and installation within the State of North Dakota, of an antiballistic missile defense system designated "SAFEGUARD", which is a complex computer, radar, electronic missile system requiring the procurement within and without the State of North Dakota, for installation within North Dakota, of large quantities of tangible personal property.

It is alleged that tangible personal property owned by the United States and furnished by the Department of the Army to Western Electric was included in the property procured by Western Electric, and that title to such property

remained in the United States. It is further alleged that title to all property procured by Western Electric in carrying out the contract, passes directly from the vendor to the United States as purchaser, and that the property at all times remains tangible personal property which cannot be considered as improvement to real estate. The complaint further alleges that the Safeguard Contract requires the Department of the Army to reimburse Western Electric for all allowable costs incident to the performance of the contract, including any and all state and local taxes properly due and owing.

Defendants generally deny the allegations of the complaint, and specifically deny that title to any tangible personal property procured by Western Electric incident to its performance of the Safeguard Contract passes to the United States as purchaser, either from Western Electric or from the vendor, and allege that Western Electric is liable for sales and use taxes of North Dakota on its purchase price of all tangible personal property and services procured by it for use or consumption in its performance of the Safeguard Contract, and used or consumed by it in the State of North Dakota.

Defendants urge that the concept of comity and federalism necessary in maintaining the delicate balance of federal and state judicial functions will be best served by a denial of the motion to stay. They assert that when the facts in this action are determined, they will parallel those in Boeing Company v. Omdahl, 169 N.W.2d 696 (N.D.1969), so closely that the holding of that case will compel a holding that Western Electric is liable for North Dakota sales and use taxes. Defendants argue that such a determination is a construction of the tax laws of North Dakota, which finally can be made only by the North Dakota Su-

person liable for the tax pursuant to the provisions of chapter 28–32."

"57–40.2–13. Provisions of sales tax law applicable.—The provisions of chapter 57–39.2, pertaining to the administration of the retail

sales tax, including provisions for refund or credit provided therein, not in conflict with the provisions of this chapter, shall govern the administration of the tax levied in this chapter."

preme Court, and which they contend would be controlling on the federal courts. They suggest that the federal court should abstain, so that the parties can proceed in state court for a determination of the issue,[2] and then any federal constitutional issues remaining after construction of the tax laws by the state courts can be resolved in the federal courts.

Plaintiffs' response is that the state law in this case is clear and not at issue, that the issues relate to alleged infringement by the State upon the Constitutional immunity of the United States, and that it is a matter of factual determination and application of federal procurement law to ascertain if the incidence of the taxes asserted by the State fall upon the United States as vendee of the personal property involved. Plaintiffs assert further that the federal forum is the forum of choice because the United States has an absolute right to apply to the federal courts for determination of interests affecting the sovereign. Plaintiffs also point out that the United States is not a party to the administrative proceedings commenced by the State after the United States filed its action, which administrative proceedings appear to be designed and intended to lead to the adjudication of the tax controversy in the state courts.

■ It is the view of this Court that the ultimate issue to be determined whether the matter is litigated in state or federal court is: On whom does the incidence of the tax fall? The United States and Western Electric allege that the incidence will fall on the United States, and by their pleadings, they have placed in issue not an interpretation of the North Dakota tax laws, which ap-

pear to be clear and unambiguous, but the question of federal immunity under the facts alleged in the case. A determination by the state courts on this issue is not binding on the federal court. *See* First Agricultural National Bank of Berkshire County v. State Tax Commissioner, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968), and abstention is not required, *see* United States v. Nevada Tax Commission, 439 F.2d 435 (9th Cir. 1971).

The question remaining is should the State administrative proceedings be stayed? 28 U.S.C. § 2283 provides:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

■ This section has been held not to be applicable when the United States seeks to protect what it alleges to be federal interests.

> "The statute is designed to prevent conflict between federal and state courts. This policy is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay to prevent irreparable injury to a national interest. The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of court proceedings except under the severe restrictions of 28 U.S.C. § 2283 would be so great that we cannot reasonably impute such a purpose to Congress

2. "57–39.2–16. Appeals.—1. An appeal may be taken by the taxpayer to the district court of the county in which he resides, or in which his principal place of business is located, within thirty days after he shall have received notice from the commissioner of his determination as provided for in section 57–39.2–15. The appeal shall be taken pursuant to and in accordance with chapter 28–32." "28–32–21. Review in supreme court.—The

judgment of the district court in an appeal from a decision of an administrative agency may be reviewed in the supreme court on appeal in the same manner as any case tried to the court without a jury may be reviewed, except that the appeal to the supreme court must be taken within three months after the service of the notice of entry of judgment in the district court."

from the general language of 28 U.S.C. §§ 2283 alone." Leiter Minerals, Inc. v. United States, 352 U.S. 220, 225, 226, 77 S.Ct. 287, 291, 1 L.Ed.2d 267 (1957); *In Accord* N. L. R. B. v. Roywood Corp., 429 F.2d 964 (5th Cir. 1970); United States v. Certified Industries, Inc., 361 F.2d 857 (2nd Cir. 1966); Eden Memorial Park Association v. United States, 300 F.2d 432 (9th Cir. 1962); United States v. Farmers State Bank, 249 F.Supp. 579 (D.S.D.1966).

28 U.S.C. § 1341 provides:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

It has been repeatedly held that this section is not applicable where a United States plaintiff seeks to enjoin state tax proceedings.

"[W]e conclude, in accord with an unbroken line of authority, and convincing evidence of legislative purpose, that § 1341 does not act as a restriction upon suits by the United States to protect itself and its instrumentalities from unconstitutional state exactions." Department of Employment v. United States, 385 U.S. 355, 358, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966); United States v. Arlington County, Virginia, 326 F.2d 929 (4th Cir. 1964); United States v. Bureau of Revenue of State of New Mexico, 291 F.2d 677 (10th Cir. 1961); United States v. Department of Revenue of State of Illinois, 191 F.Supp. 723 (N.D.Ill.1961).

 This Court has reached a determination that it would be appropriate for it to exercise what appears to be its discretionary power to stay the State administrative proceedings. The following factors were considered in reaching that determination.

1. The action in federal court is the only one that could finally determine the basic issue in litigation. *See* Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957). Since the United States is not a party to the State proceedings, its interests relating to federal procurement law and immunity could not be directly litigated in the State action. An adjudication of the federal immunity question in the State courts adverse to the United States would not be final.

2. In *Leiter*, the Supreme Court was concerned with the possibility of a conflict in the outcome of State and federal court proceedings.

"[S]ince the position of the United States is essentially a defensive one, we think that it should be permitted to choose the forum in this case, even though the state [action] has the elements of an action characterized as *quasi in rem*. We therefore hold that the District Court properly exercised its jurisdiction to entertain the suit in federal court and to prevent the effectuation of state court proceedings that might conflict with the ultimate federal court judgment." at 228, 77 S.Ct. at 292.

That same concern is present here.

3. Where the federal government has a direct pecuniary interest in enjoining state collection proceedings, United States v. Arlington County, Virginia, 326 F.2d 929 (4th Cir. 1964), as where it is obligated by contract to reimburse its contractor for state taxes, United States v. Department of Revenue of State of Illinois, 191 F.Supp. 723 (D.Ill.1961), that interest weighs heavily in favor of staying state proceedings seeking to impose taxes upon the contractor. Here the United States has alleged such an interest.

4. The subject matter of the contracts to be interpreted herein is a vehicle of the sovereign's implementation of a system of national defense, and the United States has alleged an interest

**354**

which it is entitled to litigate in a forum of its choice.

5. The simultaneous litigation of the same issues in state and federal court would mitigate against the concept of comity and federalism, and would be upsetting to the delicate balance of federal and state judicial functions.

It is ordered plaintiffs' motion to stay is granted. Defendants and all persons in active concert or participation with them are restrained from proceeding with the administrative tax proceedings initiated by the Defendant Tax Commissioner, pending a final determination in this case.